1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ALLAN TOBIN,<br><br>Petitioner,<br><br>v.<br><br>RONALD DAVIS, Warden of San Quentin State Prison,<br><br>Respondent.[1] | Case No.  1:18-cv-01375-NONE-SAB<br><br>DEATH PENALTY CASE<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE: MOTION FOR STAY AND ABEYANCE DURING PENDENCY OF STATE EXHAUSTION PROCEEDINGS |

17    Before the Court is a motion, timely filed on August 27, 2021 by Petitioner Christopher

18  Tobin through counsel, Assistant Federal Defenders Sam Sweeney and Karl Saddlemire, to stay

19  federal proceedings pursuant to Rhines v. Weber, 544 U.S. 269 (2005), to allow state court

20  exhaustion of Claims II, IV(E), XXV(C), and XLI in the mixed federal habeas corpus petition

21  filed on September 26, 2019 pursuant to 28 U.S.C. § 2254.  Respondent Warden Ronald Davis,

22  through counsel, Deputy Attorney General Galen Farris, timely filed his opposition to the

23  motion on October 6, 2021.  Petitioner timely replied to the opposition on October 21, 2021.

24  No hearing date has been set, and the matter has been taken under submission.[2]

25    Upon consideration of the parties' filings, the record, and controlling legal authority, the

26

27  [1] Ron Broomfield, Acting Warden of San Quentin State Prison, is substituted for Ronald Davis, former Warden of San Quentin State Prison, pursuant to Federal Rules of Civil Procedure 25(d).

28  [2] See ECF No. 46 at 1-2.  Unless noted otherwise, references are to CM/ECF system pagination.

1    Court finds that Petitioner has satisfied <u>Rhines's</u> requirements for Claims II and XXV(C), and

2    recommends this proceeding be stayed for exhaustion proceedings in state court.[3]

### I. BACKGROUND AND PROCEDURAL HISTORY

4          On April 24, 1990, following joint jury trial with co-defendant Richard Letner,

5    judgment of death was entered against Petitioner and Letner upon conviction in Tulare

6    County Superior Court Case No. 26592 of first-degree murder (Penal Code § 187), with

7    special circumstances of murder during the attempted commission of rape, the commission of

8    robbery, and the commission of  burglary (Penal Code § 190.2(a)(17), in the March 1988

9    stabbing death of 59-year-old Ms. Ivon Pontbriant.[4]  (<u>See</u> ECF No. 19-1; CT 971-994, 1272,

10   1591-1597.)  Petitioner and Letner also were convicted on counts of attempted rape (Penal

11   Code § 664/261(2)), robbery (Penal Code § 211), burglary (Penal Code § 459), and auto theft

12   (Vehicle Code § 10851).  (<u>Id.</u>)

13         On July 29, 2010, Petitioner's joint conviction and sentence were affirmed on direct

14   appeal by the California Supreme Court.  <u>People v. Letner and Tobin</u>, 50 Cal. 4th 99 (2010)

15   (rehearing denied Sep. 15, 2010) (certiorari denied Apr. 18, 2011, <u>Tobin v. California</u>, 563

16   U.S. 939 (2011)).

17         On September 26, 2018, the California Supreme Court summarily denied Petitioner's

18   habeas petition.  <u>In re Tobin</u>, Case No. S151243.

19         On October 5, 2018, Petitioner began this 28 U.S.C. § 2254 proceeding by filing an

20   application for leave to proceed *in forma pauperis* and request for appointment of counsel.

21   (ECF Nos. 1 & 2.)

22         On September 26, 2019, Petitioner filed his 559-page federal petition stating 41 claims

23   including subclaims, supported by 35 exhibits.  (ECF No. 22.)  On January 30, 2020,

24   Respondent filed a motion to dismiss the federal petition on grounds twelve of the forty-one

25   claims therein remained unexhausted.  (ECF No. 29.)

---

26   [3] Because good cause is otherwise apparent, the Court need not and does not consider Petitioner's alternative
     theories of good cause, i.e. unavailable legal theory and cumulative error therefrom, asserted as to Claims IV(E)
27   and XLI, respectively.

     [4] Co-defendant Letner's related federal habeas petition, separately pending in this Court, has been stayed for
28   exhaustion.  <u>See</u> <u>Letner v. Davis</u>, 18-cv-1459-NONE-SAB (ECF Nos. 9, 57).

1    On August 13, 2020, the Court issued findings and recommendations to the unassigned

2    district judge that Claims XXVIII and XXXVII be found exhausted; Claims II, IV, VII, IX,

3    XII, XVII, XXIII, XXV, XXXIX, and XLI be found unexhausted; and Respondent's motion

4    to dismiss be granted as to Claims II, IV, VII, IX, XII, XVII, XXIII, XXV, XXXIX, and XLI

5    without prejudice to a subsequent motion to amend the petition as to these claims, and

6    otherwise denied.  (ECF No. 36.)

7    On April 27, 2021, the district judge: (i) adopted the findings and recommendations that

8    Claims IV(D), VII(C [the portion alleging improper religious remarks by the prosecutor

9    during the penalty phase closing argument]), XXVIII and XXXVII be found exhausted;

10    Claims II, IV(E), VII(A, C [the portion alleging improper use of a demonstrative chart by the

11    prosecutor during the penalty phase closing argument]), IX, XII, XVII, XXIII, XXV(C),

12    XXXIX(A-G, K), and XLI be found unexhausted; and Petitioner's request for stay and

13    abeyance of this federal habeas action with respect to Claim XVII pursuant to Rhines be

14    denied without prejudice; (ii) declined to adopt the remainder of the findings and

15    recommendations; (iii) denied without prejudice respondent's motion to dismiss; and (iv)

16    referred the case back to this Court for further proceedings on a motion for stay and abeyance

17    pursuant to Rhines.  (ECF No. 41.)

## II. ANALYSIS

19    Petitioner moves the Court to stay the federal proceedings and hold them in abeyance for

20    a reasonable time so that he may present to the state courts in a second-in-time petition, the

21    following unexhausted Claims:

23    • Claim II, alleging presentation of false expert opinion as to hair identification,
ABO and PGM blood typing, and semen identification, in violation of: (i) Penal
Code section 1473(e)(1) [effective January 1, 2015\][5], and (ii) state and federal

---

[5] Penal Code § 1473 provides that:
(a) Every person unlawfully imprisoned or restrained of his or her liberty, under any pretense, may prosecute a writ of habeas corpus to inquire into the cause of his or her imprisonment or restraint.
(b) A writ of habeas corpus may be prosecuted for, but not limited to, the following reasons:
(1) False evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at a hearing or trial relating to his or her incarceration.

1    due process principles as to alleged false ABO and PGM blood typing.

2    • Claim IV(E), alleging entitlement to relief from felony murder and aider-abettor
3    liability pursuant to: (i) Senate Bill No. 1437 [hereinafter "SB 1437"] amending
     Penal Code sections 188 [regarding malice murder] and 189 [regarding degrees of
     murder], and retroactive enabling provisions of Penal Code section 1170.95)
4    [effective January 1, 2019], and (ii) the Fifth, Eighth, and Fourteenth
     Amendments.[6]

5
6    • Claim XXV(C), alleging ineffective assistance of trial counsel by failure to
     investigate and confront misleading ABO and PGM blood typing evidence, in
     violation of the Sixth, Eighth, and Fourteenth Amendments.

7
8    • Claim XLI, alleging cumulative error arising from Claims II, IV(E), XXV(C).

9    (ECF No. 45 at 1-2, citing In re Clark, 5 Cal. 4th 750 (1993); In re Robbins, 18 Cal. 4th 770

10   (1998); In re Friend, 11 Cal. 5th 720, 739-41 (2021), as modified September 1, 2021 (the

11   restrictions on successive habeas petitions promulgated in Proposition 66, the Death Penalty

12   Reform and Savings Act of 2016 [as approved by voters, Gen. Elec. (Nov. 8, 2016) § 1], do not

13   apply to a newly available claim raised at the first opportunity).)

14       A federal court will not grant a state prisoner's application for a writ of habeas corpus

15   (2) False physical evidence, believed by a person to be factual, probative, or material on the issue of guilt,
     which was known by the person at the time of entering a plea of guilty, which was a material factor directly
16   related to the plea of guilty by the person.
     (c) Any allegation that the prosecution knew or should have known of the false nature of the evidence referred
17   to in subdivision (b) is immaterial to the prosecution of a writ of habeas corpus brought pursuant to
     subdivision (b).
18   (d) This section shall not be construed as limiting the grounds for which a writ of habeas corpus may be
     prosecuted or as precluding the use of any other remedies.
19   (e)(1) For purposes of this section, "false evidence" shall include opinions of experts that have either been
     repudiated by the expert who originally provided the opinion at a hearing or trial or that have been undermined
20   by later scientific research or technological advances.
     (2) This section does not create additional liabilities, beyond those already recognized, for an expert who
21   repudiates his or her original opinion provided at a hearing or trial or whose opinion has been undermined by
     later scientific research or technological advancements.

22   [6] SB 1437 modified California law to limit liability for murder in the commission of a felony to situations where a
23   participant in the underlying felony (1) is the actual killer; (2) is not the actual killer but, with intent to kill, aids or
     abets a first degree murder; or (3) is a major participant in the underlying felony and acts with reckless
     indifference to human life. Cal. Pen. Code § 189(e).  Penal Code §1170.95 provides in pertinent part:
24   (a) A person convicted of felony murder or murder under a natural and probable consequences theory may file
     a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to
25   be resentenced on any remaining counts when all of the following conditions apply:
     (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to
26   proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.
     (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea
27   offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.
     (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188
28   or 189 made effective January 1, 2019.

4

1   unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C.

2   § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by fairly presenting to the

3   highest state court all federal claims before presenting those claims for relief to the federal

4   court.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Wooten v. Kirkland, 540 F.3d 1019, 1025

5   (9th Cir. 2008).

6       Stay and abeyance of a federal habeas petition that includes both exhausted and

7   unexhausted claims is appropriate in "limited circumstances" where: (i) "the petitioner has good

8   cause for his failure to exhaust," (ii) "his unexhausted claims are potentially meritorious," and

9   (iii) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."

10  Rhines, 544 U.S. at 277-78.  Such a stay allows state courts the first opportunity to consider

11  and address a state prisoner's habeas corpus claims.  Rhines, 544 U.S. at 273–74 (citing Rose

12  v. Lundy, 455 U.S. 509, 518-19 (1982)); see also King v. Ryan, 564 F.3d 1133, 1138 (9th Cir.

13  2009) ("Habeas petitioners have long been required to adjudicate their claims in state court -

14  that is, 'exhaust' them before seeking relief in federal court.").

15      The decision whether to grant a Rhines stay is subject to the discretion of the district court.

16  Rhines, 544 U.S. at 276; see also Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005) (when the

17  three Rhines factors are satisfied, however, "it likely would be an abuse of discretion for a

18  district court to deny a stay[.]").

19      A.    Good Cause for Failure to Exhaust

20      The first Rhines factor is whether Petitioner has good cause for his failure to present the

21  unexhausted Claim(s) to the state court.  Petitioner argues good cause arising from state habeas

22  counsel's prejudicially deficient failure to present in state court: (i) Claim II allegations of false

23  expert opinion relating to hair identification, ABO and PGM blood typing, and semen

24  identification, under then available Penal Code section 1473(e )(1), and (ii) Claim II and Claim

25  XXV(C) allegations of ineffective assistance of trial counsel relating to false and misleading

26  ABO and PGM blood typing evidence, under the Sixth, Eighth, and Fourteenth Amendments.

27  (See ECF No. 45 at 4-5, citing In re Richards, 63 Cal.4th 291, 293 (2016) (under Section 1473

28  as amended, "false evidence shall include opinions of experts that have either been repudiated

1  by the expert who originally provided the opinion at a hearing or trial or that have been

2  undermined by later scientific research or technological advances." [§ 1473(e)(1), added by

3  Stats.2014, ch. 623, § 1]); see also ECF No. 22 at 98, citing Napue v. Illinois, 360 U.S. 264,

4  269 (1959) (petitioner alleging prosecution presentation of false testimony or evidence must

5  show (1) the testimony was actually false, (2) the prosecutor knew or should have known of the

6  actual falsity at the time of presentation, and (3) the false testimony or evidence was material

7  to the conviction).)

8      Petitioner relies upon evidence in the state record that the prosecutor presented the three

9  types of false and misleading expert opinion.  First, he argues prosecution hair identification

10  expert, FBI agent Michael Malone, had a practice of testifying beyond acceptable standards for

11  scientific analysis of hair, including embellished and false testimony, resulting in repudiation

12  by the FBI, and reversal of convictions by courts in other matters.  (See ECF No. 22 at 137-44;

13  ECF No. 20-1 at 152-55, 230-38.)  He observes that Malone's expert testimony in this case,

14  purportedly identifying and matching hair found at the crime scene (see ECF No. 22 at 44-46,

15  68-69, 79-86; ECF No. 17-12 at 113-26; ECF No. 18-7 at 26-27; ECF 20-14 at 31-36; ECF No.

16  20-38 at 10) was not supported by the testimony of state criminalist and hair expert, Gary

17  Cortner (see ECF No. 18-3 at 69-73).

18      Next, Petitioner argues prosecution serology expert, state criminalist Rodney Andrus,

19  testified beyond acceptable standards by incorrectly analyzing and mischaracterizing the results

20  of crime scene blood analysis.  He observes that, while Andrus's ABO-type and PGM-type

21  analysis was inconclusive, Andrus nonetheless testified that Petitioner could have been the

22  source of blood found at the crime scene.  (See ECF No. 22 at 144-45; ECF No. 17-11 at 155-

23  61; ECF No. 20-1 at 310-11.)  He observes that Andrus so opined notwithstanding that the

24  victim's live-in boyfriend, Warren Gilliland, and a significant portion of the general population,

25  shared the same ABO and PGM blood types as Petitioner.  (See ECF No. 22 at 46-47, 65-66;

26  ECF No. 17-11 at 154-55).  He observes the prosecutor argued the evidentiary value of

27  Andrus's misleading findings in her case against Petitioner (see ECF No. 22 at 145, citing ECF

28  No. 17-11 at 162; see also ECF No. 18-7 at 31-32), discounting the possibility that crime scene

1    blood could have come from Letner and the victim (see ECF No. 18-8 at 140).

2         Finally, Petitioner argues state criminalist Andrus testified beyond acceptable standards

3    by incorrectly analyzing and falsifying the results of crime scene semen analysis.  He observes

4    that, while Andrus analyzed alleged semen evidence found on carpet collected from the crime

5    scene bedroom approximately two months after the murder and found it negative for

6    Petitioner's semen, Andrus nonetheless testified that the carpet fibers gave indications of a

7    match for Petitioner.   (See ECF No. 17-11 at 51; ECF No. 17-12 at 25-30; 18-7 at 32-33; ECF

8    No. 20-1 at 132-37, 145-46; see also ECF No. 20-14 at 115-27.)  He observes the prosecutor

9    argued the evidentiary value of Andrus's false findings in her case against Petitioner, knowing

10   that Andrus had not analyzed then available control carpet fibers and victim fluids, that might

11   have allowed Andrus to more definitively opine upon the presence and identification of semen.

12   (See ECF No. 22 at 48, 66-68, 148-59; ECF No. 17-12 at 25-30; ECF No. 18-7 at 32-33; ECF

13   No. 20-1 at 238-43; ECF No. 20-14 at 115-27.)

14        "Good cause" in the context of a Rhines stay turns on whether the petitioner can set forth

15   a reasonable excuse, supported by sufficient evidence, to justify the failure to exhaust.  Jackson,

16   425 F.3d at 661-62; see also Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005) (reasonable

17   confusion about timeliness of a state filing ordinarily constitutes good cause); Blake v. Baker,

18   745 F.3d 977, 982 (9th Cir. 2014) ("legitimate reason" for the failure to exhaust satisfies the

19   equitable "good cause" element of the Rhines test).

20        The Ninth Circuit Court of Appeals has observed that:

21

22        The caselaw concerning what constitutes "good cause" under Rhines has not
          been developed in great detail. Blake v. Baker, 745 F.3d 977, 980 (9th Cir. 2014)
          ("There is little authority on what constitutes good cause to excuse a petitioner's
23        failure to exhaust.").

24        * * *

25        We do know, however, that a petitioner has been found to demonstrate "good
          cause" where he meets the good cause standard announced in Martinez v. Ryan,
26        566 U.S. 1 (2012). Blake, 745 F.3d at 983–84. Martinez carved out an exception
          to the general rule, stated in Coleman v. Thompson, 501 U.S. 722, 753-54
27        (1991), that "ignorance or inadvertence" on the part of a petitioner's post-
          conviction counsel does not constitute cause to excuse a procedural default of a
28        claim. Specifically, the Martinez Court concluded that "[w]here, under state law,

                                                  7

1
2
3

claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S.Ct. at 1320.

4
5
6
7
8
9
10

In Blake, we concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a Rhines stay, provided that the petitioner's assertion of good cause "was not a bare allegation of state post-conviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence." Blake, 745 F.3d at 983. The court further observed that "good cause under Rhines, when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under Martinez to excuse state procedural default." Id. at 983–84.  We emphasized, in response to the idea that ineffective assistance of post-conviction counsel could always be raised, that Rhines's requirement that claims not be plainly meritless and that the petitioner not engage in dilatory litigation tactics "are designed ... to ensure that the Rhines stay and abeyance is not . . . available in virtually every case," id. at 982.

11   Dixon v, Baker, 847 F.3d 714, 720-21 (9th Cir. 2017).

12    The Court finds that Petitioner has met the Coleman/Martinez standard to show  good

13   cause under Rhines.  See Blake, 745 F.3d at 983-84 & n.7 (the Rhines standard for IAC-based

14   cause is not any more demanding than the cause standard articulated in Martinez).  As

15   Petitioner argues, he need not prove ineffective assistance of post-conviction counsel under

16   the standard of Strickland v. Washington, 466 U.S. 668 (1984).  See e.g., Ervine v. Warden,

17   San Quentin State Prison, No. 2:15-CV-1916 TLN DB, 2018 WL 372754, at *3 (E.D. Cal.

18   Jan. 10, 2018), report and recommendation adopted, No. 2:15-CV-01916-TLN-DB, 2018 WL

19   1173959 (E.D. Cal. Mar. 6, 2018).  Under Blake, Petitioner need only provide a "concrete and

20   reasonable excuse, supported by evidence" that his post-conviction counsel failed to discover,

21   investigate, and present to the state courts the new claim.  Id.; see also Martinez, 566 U.S. at

22   14.

23    Petitioner has carried this burden.  He has done more than make a "bare allegation" of

24   ineffective assistance by post-conviction counsel.  Blake, 745 F.3d at 983.  He has provided

25   inference drawn from the noted state record that post-conviction counsel was prejudicially

26   deficient by failing to investigate, develop and present, in state court, the legal theories and

27   factual bases asserted in Claims II and XXV(C).  For example, he has supported an inference

28   that reasonable state habeas counsel would have challenged the noted allegedly false and

8

1    misleading forensic evidence under Penal Code section 1473, which standard of proof, he

2    contends, is more favorable than the grounds raised by state habeas counsel.  (See ECF No.

3    45 at 5-6; see also ECF No. 20-1, state habeas claims A-C, E; Roe v. Flores-Ortega, 528 U.S.

4    470, 481 (2000) ["The relevant question is not whether counsel's choices were strategic, but

5    whether they were reasonable."].)

6        As noted in Ervine:

7

8    Courts in this circuit have found good caused based on a similar showing. See
     Cruz v. Mitchell, No. 13-CV-2792-JST, 2015 WL 78779 (N.D. Cal. Jan. 5,
     2015) (petitioner's showing that current counsel uncovered evidence of jury
9    misconduct that could have been uncovered, and raised, by state habeas counsel
     is sufficient showing of ineffective assistance of counsel for Rhines stay).
10

11   2018 WL 372754, at *3; cf. Barrera v. Muniz, No. 2:14-CV-2260 JAM DAD P, 2015 WL

12   4488235 at *3 (E.D. Cal. July 23, 2015), report and recommendation adopted, 2015 WL

13   6736813 (E.D. Cal. Nov. 4, 2015) (no good cause found where petitioner submitted no

14   evidence in support of ineffective assistance of counsel).

15       Respondent's argument, that Petitioner has not provided any actual evidence the

16   prosecution forensic evidence was false and non-probative (see ECF No. 47 at 3-5), belies the

17   above noted state record.

18       Respondent's argument, that violation of Penal Code section 1473 presents only state law

19   issues not right for federal habeas relief, is unpersuasive.  (See ECF No. 47 at 7.)  An error of

20   state law may be a valid basis for federal habeas relief, where, as here, the error allegedly

21   amounts to a due process violation.  See e.g., United States v. Young, 17 F.3d 1201, 1203-04

22   (9th Cir. 1994) (a state court's error of state law is not a valid basis for federal habeas relief,

23   unless the error amounts to a due process violation); Estelle v. McGuire, 502 U.S. 62, 71-72

24   (1991) ("The only question for us is whether the [alleged state court error] by itself so infected

25   the entire trial that the resulting conviction violates due process).

26       The state record in this case is sufficient under Rhines to support Petitioner's allegations

27   that violation of his rights under Penal Code section 1473 would implicate his federal rights.

28   (See ECF No. 22 at 67 [state court refusal to provide relief from false forensic evidence

9

1    constituted an arbitrary deprivation of a state law entitlement in violation of due process rights];

2    see also id. at 84, citing United States v. Bagley, 473 U.S. 667, 678 (1985) [suppression of

3    evidence amounted to a constitutional violation, denying a fair trial], Killian v. Poole, 282 F.3d

4    1204, 1208-1210 (9th Cir. 2002) [under the Young standard, a court must determine whether

5    there is a reasonable probability that without the trial court error, the result of the proceeding

6    would have been different]; ECF No. 48 at 4 (citing to Bagley, Napue, and Young as federal

7    grounds for relief); Lyons v. Pliler, No. C 98-1890 CRB (PR), 1999 WL 179677, at *5 (N.D.

8    Cal. Mar. 29, 1999) (stating that a habeas claim based on an alleged violation of a state statute

9    must be rejected unless the violation "constitutes an arbitrary deprivation of a state-created

10    liberty interest").

11      Respondent's mere surmise, that post-conviction counsel must have been tactically

12    motivated in using the blood type evidence to support actual innocence rather than mounting a

13    challenge to the admissibility of the forensic evidence (see ECF No. 47 at 4-5, citing Davila v.

14    Davis, __U.S. __, 137 S.Ct. 2058, 2067 (2017) (effective appellate counsel should not raise

15    every nonfrivolous argument on appeal, but rather only those arguments most likely to

16    succeed)), is not alone a basis upon which to find otherwise, for the reasons stated.  Especially

17    so, given that the noted state record inferentially suggests state habeas counsel's insufficient

18    investigation of the allegedly false and misleading hair, blood, and semen evidence and related

19    state law theory, so as to preclude reasonable tactics.  (See e.g. ECF No. 17-11 at 51, 154-55,

20    162; ECF No. 17-12 at 25-30, 113-26 ; ECF No. 18-3 at 69-73; ECF No. 18-7 at 26-27, 31-33;

21    ECF No. 18-8 at 140; ECF No. 20-1 at 132-37, 145-56, 152-55, 230-43, 310-11; ECF 20-14 at

22    31-36, 115-27; ECF No. 20-38 at 10.)

23      The absence of a declaration by, or testimony from state habeas counsel attesting to the

24    lack of post-conviction tactics in failing to raise the noted unexhausted Claims, is not alone

25    suggestive of a reasonable post-conviction strategy.  See Davis v. Davis, No. C-13-0408 EMC,

26    2015 WL 4512309, at *4 (N.D. Cal. July 24, 2015) (noting the absence of any requirement that

27    ineffective assistance claims be supported by declarations from counsel); cf. ECF No. 47 at 3-

28    4, citing Lisea v. Sherman, No. 2:14-CV-1766 CKD P, 2014 WL 4418632 at *3 (E.D. Cal.

1    Sept. 8, 2014) (denying a motion for stay and abeyance because the petitioner presented no

2    evidence in support of his contention that appellate counsel was ineffective in failing to raise

3    certain claims).

4         **B.      Potentially Meritorious Claims**

5         The second <u>Rhines</u> factor is determining whether an unexhausted Claim is "potentially

6    meritorious." Petitioner argues the unexhausted allegations in Claims II and XXV(C), that the

7    prosecutor presented and trial counsel failed adequately to challenge false and misleading

8    forensic evidence relating to hair, blood type, and semen identification, violating his state and

9    federal rights, are not plainly meritless.  (ECF No. 45 at 7-8, citing to federal Claims I, II, V,

10   VI, VIII, and XXV; <u>see also</u> ECF No. 48 at 4-5.)  Particularly, he argues that: (i) FBI agent

11   Malone's work on hair analysis was called into question in separate proceedings

12   contemporaneous to Petitioner's proceeding, and also by the FBI; (ii) the crime scene blood

13   type evidence presented at trial, purportedly matching Petitioner's blood type, had no probative

14   value and was misleading because the sample size was problematic and the resultant blood type

15   was shared by a significant percentage of the population including the victim's boyfriend,

16   Warren Gilliland; and (iii) absent the alleged constitutional error and deficient conduct of trial

17   counsel, significant doubt could have been raised as to the probative value and admissibility of

18   the forensic evidence, and the reliability of Petitioner's conviction and sentence.  (See ECF No.

19   45 at 7-8; ECF No. 48 at 6 n.4.)

20        A federal habeas petitioner need only show that <u>one</u> of his unexhausted claims is not

21   "plainly meritless" in order to obtain a stay under <u>Rhines</u>.  544 U.S. at 277.  In determining

22   whether a claim is "plainly meritless," principles of comity and federalism demand that the

23   federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the

24   petitioner has no hope of prevailing."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir. 2005).

25   "A contrary rule would deprive state courts of the opportunity to address a colorable federal

26   claim in the first instance and grant relief if they believe it is warranted."  <u>Id.</u> (citing <u>Lundy</u>,

27   455 U.S. at 515).

28        The Court finds Petitioner has adequately demonstrated the unexhausted allegations in

1    Claims II and XXV(C) are potentially meritorious under Rhines.[7]  These allegations, relating

2    to false and misleading testimony regarding crime scene hair, blood, and semen evidence,

3    implicate state, and federal constitutional grounds for relief including the fundamental

4    fairness of Petitioner's trial and the reliability of his conviction and sentence, and are at least

5    "colorable" and not "hopeless" upon consideration of the noted state record.  See Cruz, 2015

6    WL 78779, at *3 (petitioner's unexhausted claims are potentially meritorious where they are

7    not "vague, conclusory, or patently frivolous"); see also Brecht v. Abrahamson, 507 U.S. 619,

8    637-38 (1993) (federal habeas relief available where constitutional trial court error had a

9    substantial and injurious effect on the verdict); Strickland, 466 U.S. at 694 (federal habeas

10   relief for ineffective assistance of counsel available where, absent counsel's deficient conduct,

11   there is a reasonable probability of a different outcome).  These unexhausted allegations are

12   "well-supported by specific averments and numerous exhibits" and by "relevant legal

13   authority" and "such evidence and offers of proof as are presently available to [Petitioner]."

14   Cruz, 2015 WL 78779, at *3; (see also ECF No. 17-11 at 51, 154-55, 162; ECF No. 17-12 at

15   25-30, 113-26; ECF No. 18-3 at 69-73; ECF No. 18-7 at 26-27, 31-33; ECF No. 18-8 at 140;

16   ECF No. 20-1 at 132-37, 145-56, 152-55, 230-43, 310-11; ECF 20-14 at 31-36, 115-27; ECF

17   No. 20-38 at 10.)  The Ninth Circuit made clear in Dixon that the federal court should not

18   usurp the state court's right to first address the merits of a "colorable federal claim."  847 F.3d

19   at 722.

20          **C.      No Intentionally Dilatory Tactics**

21          The final Rhines factor is determining whether Petitioner has engaged in "intentionally

22   dilatory tactics."  There is a paucity of case law defining this standard.

23          Petitioner argues that he has not deliberately engaged in dilatory tactics that would

24   prevent this Court from granting his motion to stay the proceedings.  (ECF No. 45 at 9-10.)

25   He observes his prompt initiation of this proceeding following the denial of his state habeas

26

27   [7] Relatedly, this Court stayed under Rhines the related habeas proceeding brought by Petitioner's co-defendant,
     Letner, in-part to allow state court exhaustion of colorable allegations relating to the prosecution's above noted
     presentation of false and misleading forensic evidence in support of murder and attempted rape counts.  See
28   Letner v. Davis, 18-cv-1459-NONE-SAB (ECF No. 57 at 7-8).

12

1   corpus petition, and compliance with this Court's case management orders including as to

2   exhaustion proceedings.  (Id., citing Leonard v. Davis, 2019 WL 1772390, at *5 (E.D. Cal.

3   Apr. 23, 2019), report and recommendation adopted Leonard v. Davis, 2019 WL 2162980

4   (E.D. Cal. May 17, 2019) ("[I]t was incumbent upon petitioner to not submit an exhaustion

5   petition until he learned which claims required further exhaustion in respondent's view, and

6   until the federal court had an opportunity to weigh in on that question.").)

7        Respondent does not argue that Petitioner has engaged in intentionally dilatory tactics,

8   and apparently concedes the point.  (See ECF No. 47; see also ECF No. 48 at 7.)

9        The Court finds nothing in the record suggesting that Petitioner engaged in

10  "intentionally dilatory litigation tactics," either prior to or after filing his federal petition.  See

11  Leonard, 2019 WL 1772390, at *5.  The record suggests that Petitioner has investigated and

12  ascertained his unexhausted claims, and sought stay and abeyance for state court exhaustion

13  consistent with the Court's case management process and scheduling orders.

14                              **III. CONCLUSIONS**

15       The Court need not determine whether a Rhines stay is appropriate as to each of the

16  unexhausted claims.  "One claim requiring a stay acts as an umbrella for all claims."  Horning

17  v. Martel, No. 2:10-CV-1932 JAM GGH DP, 2011 WL 5921662, at **2-3 (E.D. Cal. Nov.

18  28, 2011), report and recommendation adopted, 2012 WL 163784 (Jan. 19, 2012); Jackson v.

19  CSP-Solano, No. 2:14-CV-2268 MCE-DBP, 2017 WL 404583, at *5 (E.D. Cal. Jan. 30,

20  2017), report and recommendation adopted, 2017 WL 896325 (E.D. Cal. Mar. 6, 2017)

21  (same).  Because Petitioner has satisfied Rhines as to the noted unexhausted claims, the

22  instant proceeding should be stayed and held in abeyance until an exhaustion petition is filed

23  and the state courts have acted upon the second-in-time petition.[8]

24       Even so, a Rhines stay may not be indefinite or without reasonable time limits for

25  Petitioner's return to state court.  544 U.S. at 277–78.  Although the duration of the stay of

26  these federal habeas proceedings is dependent upon how long the exhaustion petition is

27

28  _____
    [8] Of course, the Court expresses no opinion on the ultimate merits of the unexhausted Claims.

1   pending before the state courts, it will conclude upon the rendering of a final decision in state

2   court on the second-in-time exhaustion petition.

3        For the reasons set forth above, the Court finds: (1) Petitioner has established good

4   cause for a stay of these proceedings based on his showing that post-conviction counsel could

5   have, but failed to, raise unexhausted Claims; (2) at least one unexhausted Claim is potentially

6   meritorious; and (3) there is no indication Petitioner has acted in an intentionally dilatory

7   fashion.[9]

8        Accordingly, **IT IS HEREBY RECOMMENDED** that:

9   1.        Petitioner's August 27, 2021  Motion for Stay and Abeyance  (ECF No. 45) be

10  granted and any and all scheduled dates in this proceeding be vacated.

11  2.        Petitioner shall file his second-in-time state exhaustion petition within thirty (30)

12  days of the filed date of the Court's order adopting these Findings and Recommendations, and

13  inform this Court within thirty (30) days of a decision by the state court on such exhaustion

14  petition.

15       These Findings and Recommendations will be submitted to the unassigned United

16  States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

17  **days** after being served with these Findings and Recommendations, any party may file written

18  objections with the Court and serve a copy on all parties.  The document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

20  ///

21  ///

22  ///

23

24

25

26  [9] The Rhines analysis above also strongly favors the issuance of the requested stay in the Court's inherent power to manage its dockets and stay proceedings. See Ryan v. Gonzales, 568 U.S. 57, 73-74 (2013) (citing Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Particularly, on the facts and circumstances of this case, granting

27  exhaustion stay eliminates the possibility of piecemeal litigation, see Calderon v. United States District Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998), abrogated on other grounds by Jackson, 425 F.3d at 660-62, and

28  promotes comity, see Lundy, 455 U.S. at 518.

1  objections shall be filed and served within **seven days** after service of the objections.  The

2  parties are advised that failure to file objections within the specified time may result in waiver

3  of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.

4  1991).

5

6

7

8  IT IS SO ORDERED.

9  Dated:    **November 17, 2021**

UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28